May it please the court, Scott Telkov on behalf of Pellant Aspen Skiing Company if I could reserve five minutes of my time for rebuttal. Just watch your time it's up to you. Thank you your honor. Pellant submits that affirmance of the ruling below will lead to an abuse of the bankruptcy code by permitting high-income debtors to file otherwise abusive chapter 7 bankruptcies. Every court in every circuit has agreed with the Kelly rule which came from the circuit. In fact there is no court no case in any circuit ever concluding that debt incurred purchase a debtor's personal residence is non-consumer debt. Debtors ask. So counsel what do you think the Kelly rule is? The Kelly rule is that debt incurred to purchase a debtor's personal residence or what the debtor intends to be their personal residence is consumer debt. Period? Period your honor. That's not what the case says. The Cox case I think is most on point here. Okay. Your honor in the Cox case the debtor stated that the source of the funds changed his motive and he had a subjectively hoped to make a profit out of investing in his personal residence. The Cox case cited Kelly as the sole source of authority that argument must be rejected. Every court sense that has addressed any debtor who asked for a subjective interpretation why they incurred the debt to purchase their personal residence has been rejected in every case. The whole subjective objective distinction that you spend so much time on your brief seems a bit of a red herring. I mean here there are a bunch of unusual objective facts and let's take Adams picture the question of whether he intended to make money in the house but there is the fact that this was compensation for his job in some fashion. Do you have any other case like that? Yes your honor. The Jones case cited in my brief a debtor received a favorable loan from his employer who was a mortgage lender and the debtors conceded that it was consumer debt. So the question is not just the employer conceded that nobody litigated it. That's not very helpful. I understood your honor but not every debtor who receives an employer sponsored loan is going to believe they're doing so for a profit purpose. They may believe that they're trying to put. But you're back to the what he believed and the question is whether there are a set of objective facts here that this was referred to as a bonus or a deferred compensation and it was part of the deal that was cut with regard to the his employment and he says he those considerations not whether he intended to make money in the house and not his subjective belief but rather the objective circumstances are such that one can say as Zabap said that this was a business purpose. Your honor you're making an argument that even the debtor doesn't make. On page 283 of the record in the deposition debtors counsel states that even the first mortgage may be non Well I don't care what, fine that's fine but I'm asking you my version. What about my version? What about your version? Under no circumstance would the debtor make money. He obviously did not have to pay interest but with that money he wanted to purchase a home. An ordinary consumer residence one where you put a roof over your head and to create an issue of fact out of that issue that's on every single bankruptcy petition is on the front page. You have to check whether they're primarily consumer or primarily non-consumer. That's almost always driven by mortgage debt or debt incurred to purchase their residence. So there's all kinds of reasons people take equity out of their homes, right? All kinds of reasons and it might be a business person purpose and it might not and what Kelly says is while secured debt is not automatically excluded from consumer debt it's not automatically included either we must look to the purpose of the debt and you seem to be arguing today and also in your briefing for this bright line rule that if it's a consumer debt then it's in one category or the other. Absolutely not, Your Honor. So try it again. What's the rule? The rule is that the debt, it's the use of the money. If Mr. Charette bought the house on a credit card it would be consumer debt. 100% of the money went to the seller of this home. Okay so sometimes people buy homes and they buy them for rental property. Sometimes people buy them to live in. Is your argument really that in this case it's not just that he bought a home but that he resided there himself? Not just that he resided there but he intended to reside there when he purchased the home. Your argument is that under Kelly you're conceding that it's not automatically consumer debt. You do look at the purpose of the debt but that this purpose was to purchase a house for him to live in not as for him to use it as a business or profit venture of any sort, right? Is that your argument? So this is much more helpful and I don't think that's where you started today so we've taken several minutes to get there but I agree. I think that's what your brief, at least generously construed, argues and I think it's what you have to argue given that Kelly's on the books and it says something different. So in this case, this family, we all know what the facts are but you seem to take issue with the court having had a hearing to determine what the real purpose was and you're arguing that it's not an issue of fact. So the question is what that purpose is. Is the purpose the use of the funds and the BAP has already construed the Charette decision, its own Charette decision, and found that the use of the funds is not determinative and its only citation was to Charette. This is the only case that has ever come to that conclusion. So how about if I ask my question? My question is, first of all, are you arguing that there should not have been evident during hearing because this is not an issue of fact? The only issue of fact would be if the debtor said I wanted to rent it and then I decided to move in and that's the Davis case that I cite talks about. A debtor can change their intent. They could buy it as a rental property and move in. As I understand his purpose, his purpose was, or one way to characterize it, was to make an arrangement to work at this job and to get fair compensation for it. And when they weren't willing to give him more money up front, he made this arrangement that they would essentially give him, what they were giving him as I understand it was an annual bonus in the amount of the interest for the loan. And I couldn't quite tell whether there was also a deferred, whether he was going to get some forgiveness on the principal or not. That was very confusing. But in any event, that's his explanation of his purpose. And they would only give it to me for a house, so I took it for a house. That's essentially his explanation. That's right, Your Honor. And just to make clear, there was no forgiveness. They wouldn't just give me the money. He suggests if they had just given me the cash, I would have taken the cash, but they wouldn't do that. We understand there was no forgiveness of the principal. But could you get back to this point? Because you seem to be taking umbrage with the notion that the court conducted an evidentiary hearing in order to determine the purpose. So that's how it seems to me that your argument circles back to say that there is a bright rule if there's debt attached to a mortgage, and that's just not consistent with Kelly. No, it has nothing to do with the mortgage, Your Honor. This issue has been raised over and over, and they can't say any more. But we have to look to purpose, right? The purpose, and the purpose turns And you seem to think that there shouldn't have been an evidentiary determination of purpose. The evidentiary determination turns on only one issue, whether the debtor intended to reside at the residence that he was purchasing with the debt. That's it. Suppose the employer had said, well, we're not going to give you a higher salary, but we'll give you a loan of $100,000, do what you want with it. Would that make a difference? No, I would say that every employee receives their compensation from their employer, and the fact that he received it in a different way doesn't change what he wanted to do with it. He wanted to buy a house to live in. So it doesn't matter that we're still linked to the mortgage, right? So if the employer had said, oh, we realize that you're moving to a high-priced area, we'll go ahead and increase your salary by 20 percent, and then he takes that 20 percent and buys a home with it, the purpose remains the same. It was to buy a home to live in. Absolutely right. That's what you're arguing. Okay. So what about the fact that in this particular case, as we all know, there were sort of two primary residences, and this particular condo wasn't even big enough to fit his family into it. Yes, Your Honor. He argues that it was sort of a bunkhouse so that I could live out in this other community and take this job. What about that? Yes, Your Honor. One hundred percent of the cases that have ruled on second homes have looked at whether they were used for a business purpose, the same question as the first. The case of Judge McDonald in Alaska in 2012 in Free Bull noted that the debtor intended it to be a second home. A retirement home. It was somewhat more useful to answer the question than to just keep citing cases. Well, not bad by a bank in Georgia. The answer is that he bought both houses to live in. And his case is exactly on point. The intent for your 10th house is also whether you intended for that 10th house to solely be for your personal occupation. The mixed-use questions that would be fascinating if this were the case are the Narrager case where somebody bought a property, 20 percent of it had a house on it and 80 percent had a kitchen. You're not stopping, even though I asked you to stop. Go ahead. I'd like to have principled reasons rather than what some other district court said. I apologize. The issue is how the money was used. So if the money was used partially for the house and partially for a business, let's say an apartment complex where the debtor lived in one of the four units, then we would say, well, it was 25 percent for a business, for a consumer purpose, and 75 percent for a non-consumer purpose. One hundred percent of the house was solely for his personal occupation, Your Honor. Can you tell me what is it that you want us to do? What will happen? Because of the procedural posture of the case, if we agree with you that the primary purpose here is for him to live in the house and, therefore, it's consumer debt, what then? Your Honor, you would reverse the ruling that the debt was incurred for a non-consumer purpose, which would, and you could if you wanted to, require the court to vacate the discharge order that was entered under the belief that the motion to dismiss was denied. Isn't there a second step in this inquiry, i.e., whether there was an abuse of bankruptcy? Yes, the second step was not contested, Your Honor. The debtor earned $381,000 a year, and there was no issue that he would not pass the means test if the means test applied. And with regard to a stay, this court in 2007, and I apologize, I'm forgetting the name of the case, set forth that there is no stay required to stop acts that are encompassed within that order so long as it is a final non-interlocutory order. And the BAP in this case ruled it was a final non-interlocutory order. It depends on whether the motion to dismiss was granted or denied, right? I don't think so, but I don't know that there's quite case law on exactly this procedural posture. Okay. I think you have an uphill battle on that. Maybe you want to think about that while you're waiting. Thank you, Your Honor. You bet. We'll hear from opposing counsel. Good morning. Good morning, Your Honor. I think it's still morning. Yes, it's still morning. Okay. Kathleen McCarthy of Laws, this is a Thomas H. Casey and Les Kaufman of Kaufman & Kaufman representing the Charettes, who are the debtors in this case. The Aspen Skiing Company would like you to think in order to determine the purpose of a loan, the only thing you look at is the use of the loan proceeds. The Charettes believe it's a much broader and more factually intensive investigation. So what exactly do you think makes this not a consumer loan? When you look at the totality of the facts of the case. I know. I want to know why. Why? It is part of an employment employer contract, a written contract, that Mr. Charette and Aspen entered into so that they could go on to the business opportunity of expanding the Little Nell Hotel chain. No, it's not the fact. I mean, at points you seem to be saying, maybe the bankruptcy court, that he had a business purpose because he wanted to move there and take this job, which would suggest that even if the money didn't come from the employer, if he made a determination to buy a house that he wouldn't have bought, but for the fact that he wanted this job. Is that argument? No, not that he wouldn't have taken the job, but for this. Because that happens all the time, right? You're not going to move and buy a place in a town if you don't have a job there. And he would want to take this job. When the job was first offered, it wasn't sufficient. It was the same task, same opportunity that he already had. He had been with the Four Seasons for 25 years. It was the same thing. I don't know what that has to do with the purpose of the loan in this case, because what Kelly says is debt incurred for business ventures or other profit-seeking activities is plainly not consumer debt. And so you look at the purpose of the loan and whether it's for business venture or profit-seeking activity. So to get back to Judge Berzon's earlier question, if they'd increased his salary and he went out and bought a house to live in instead of using it for business venture, that would be a consumer debt, right? There wouldn't have been a debt. This debt was repaying the housing loan. So in that scenario, let's say they did up his salary and somehow they mistakenly overpaid him and he turned around and had to pay them back. That would be a debt and that would be a business debt. One of the things I've been trying to unpack here is are we talking basically about the $500,000 principle? Is that what the loan that we're talking about? Not the interest? Both. The employment contract provided for both payments. But at this point, at this point, what is it that hasn't been paid? There has not been. What is the debt? What is the debt? That is something for the Aspensky Company. My understanding is that they're a foreclosed out junior from the house. That they're what? They're now a foreclosed out junior lien holder on the house. Right. And so it's a matter of whether this debt is discharged or not. Colorado does not have anti-deficiency laws. The reason I'm asking is because the negotiations were essentially over the interest, right? In other words, it was an interest-free loan but the principle would have been the same wherever they got it from. It was actually the use of the $500,000. There was no way the Sharettes would be able to buy a home in Aspen and take advantage of the fact that there was an uptick in the real estate market at that time. He would have been a renter and he didn't want to be a renter. In order to buy a house in Aspen, the $500,000 allowed him to use that money. It would be like being able to use that money in the stock market. He was able to participate in the market because of that $500,000. The fact that it was interest-free was the bonus part of it, which was significant. It worked out to about $33,000 a year in additional compensation. But does that matter in analyzing the purpose of the debt? This is a debt that was created in the context of an employer-employee contract. Right, but is that the wrong focus? So when you look at the purpose of the debt for purposes of determining whether it's consumer debt, do you look as the BAP did to the source of the loan and the collateral benefit by having it be a part of this employer contract, or do you just look at the fact that this debt was essentially used to buy a home that was to live in and not for a business purpose? I don't think you limit it to any one of those elements, but you add all of them together. I think the purpose of a loan is a factual determination, which you add everything together. And so the bankruptcy judge and the BAP both look to everything involved in the case. But ultimately, the purpose of the loan from the point of view of both the lender and the borrower was to buy a house. So we could live there and work. It was to take advantage of the full compensation package that was being offered to Mr. Charette. But the compensation was for the purpose of buying a house. That's why I'm trying to look at the loan of the principal and the forgiveness of the interest as somewhat separate. But the provision of the principal was simply to buy the house, was it not? It was to provide. The interest arrangements could be seen as deferred compensation, but the $500,000 was to buy the house. It was a very important element because he would not have been able to participate in the market but for. That's why I'm describing it as a bunkhouse, because it seems to me that these are necessarily linked, right? It wasn't just to buy any old house. It was a house in order to do this job, right? It seems to me that's your best argument and it's really your only. It was to buy a house to enable him to be in that job and to have the compensation package sufficient to entice him to come join this business opportunity. Right, but we have to be very concerned about the abuse of Chapter 7. And one of the arguments that counsel makes is that in this particular case, which is certainly a one-off case, this is an unusual case, that there's a debtor here who is a high-income earner and is able to pay this back. And he also argues that this type of employee benefit or employee compensation package is increasingly common. So what about that? You have to look to the fact that the Constitution of the United States allows for Congress to enact laws of bankruptcy universal. And the reason why we have that is to encourage business risk. So the reason that 707B is limited to only consumer debtors is because we want to encourage economic risk by businessmen. And this was a business opportunity to expand the Little Nell Hotel. Well, if this were a situation where a homeowner took a bunch of equity out of a home to open a flower shop, I'd agree with you, absolutely. But this really is a little bit different, right? It's a little bit different because he lived there himself. So if you can embrace that, that's counsel's argument. What's your best response to that argument? This isn't an entrepreneur who's going out and setting up shop. This is a person who's going to live there himself. This was a means to have compensation that was adequate. Without having the use of the $500,000 to be able to invest in the real estate in Aspen, Mr. Charette would have never taken the job. Is this sort of like, it sounds to me like you're asking us to liken this or to engage in the same kind of analysis or analogy that we make when we're talking about student loans and the dischargeability of a loan like that that may advance a career? Is this analogous in any way to that? Somewhat. And when you go into the student loan cases with regards to 707B and dismissals, they often talk about whether this is a new venture or whether this is to enhance an ongoing career. Right. It's not a black-and-white rule, right? Right. No, it's not a black-and-white rule. And I think that one of the key elements of this appeal is the standard of review. And this is determining the purpose of a loan is a factual determination, and there is no clear error. But if the facts are not in dispute and we're only evaluating the legal consequences that flow from those facts, isn't that de novo review? It's de novo review with regards to did you apply the correct legal standard. And in this case, we all agree the correct legal standard is determining whether this is primarily consumer or non-consumer. That's sort of at a level of generality that's not terribly helpful. I mean, in fact, we need to know what we're looking at with regards to the purpose question, i.e., before we can answer the question. So it seems to me that Judge Nguyen's point is that if, in fact, using a loan to purchase a house is a consumer purpose, then the fact that it was found otherwise is not really a fact-finding. It's really a disagreement about what the legal standard is. Judge Berzon said it better. That was what I was getting to. Nobody is disputing the terms of this loan that he got. Right. The only question is, does that mean that it's now a consumer debt, given the way he used it? No, because use of the loan proceeds is not the only fact that is considered and not the only fact that was considered by the bankruptcy court in making the factual finding as to purpose. I think that's what I'm really struggling with, is that I think the back put too much focus on the circumstances under which the terms of this loan were really negotiated. So let me give you a hypothetical and see if you would agree that it changes the analysis. So let's say that I wanted to take a new job, but the commute is doable. It's L.A., so an hour and a half drive. But as part of the compensation package, I want to have a house a little closer to the ocean, and it's a second home, a weekend house. And so I tell my employer, you know what, I don't want to drive for an hour and a half. I'm going to be driving mainly within the busiest traffic hours in Los Angeles. So as part of my compensation package, give me an interest-free half a million dollar loan so that I can purchase the second property by the beach, and I'll drive back. I'll live there during the week, and on the weekends my family can join me occasionally. Would that change the analysis in any way? Do we look at the fact that this home was not basically rented out or it was not basically used for a home office? It's basically a second home. The fact that the loan proceeds were used to purchase a home is only one factor in determining whether it was a... So let's go back to the beginning of that. So that's one factor. The fact that he was... I assume we have to back out the notion that he was buying this house in order to take a job in Aspen because everybody buys their... or 50% of the people buy their houses because they're going to work someplace. So I assume that's not a factor by itself. And the fact that he's buying it to appreciate can't be a factor either or expecting it to appreciate. As BAP said, everybody expects their houses to appreciate. Unfortunately, this was a bad time period. So where are we then? We're down to the fact that this was part of a negotiation,  and that it was essentially in lieu of other possible forms of compensation they could have given him. Is that the key factor? Yes, Your Honor. That is a very significant factor. If you think about it as this is actually asking them, the Charrettes, to repay over compensation, no one would say that that wouldn't be helpful. Why is that? I don't understand that at all. Wouldn't that be a business debt? If you owed money back to your employer? Counsel, it seems to me that your best argument is that this is not just employer-provided housing but that it was a done deal at the time the negotiation was made that he was going to take this total employment package or not. In other words, it was essential to the employer. And I'm not sure it's enough, but I think it has to have been essential as opposed to just another ornament on the Christmas tree. Correct. That strikes me as really critical because that goes back to the student loan analogy. And, again, I'm not sure it's enough. But the student loan analogy is that this person wanted to advance his career. He wanted to do the little hotel chain. He's taking a risk. He's doing something he otherwise wouldn't have done and, in fact, couldn't have done. Put it in the student. And I'm not trying to put words in your mouth, but it seems to me that that's the sliver that's available here. I think to put it in the student loan analogy, it would be more of you are not eligible to take this position unless you are seeking your graduate degree or something. And so you must be enrolled in this program. And so that student loan is critical. But isn't the student loan context much stronger under those circumstances than this one because what they're ultimately using the money for is a business-related purpose, i.e., they're going to use the skills at work. What he's ultimately using the money for is to live someplace. When you go to the student loan cases, they talk about personal satisfaction. I understand that. But the ones that are allowed as non-consumer loans are the ones in which you're being trained specifically to do something. If the employer gave you a loan to train you, get a master's degree in mechanical engineering because you're working as a mechanical engineer, that is much more comfortable to me as a business purpose than giving you a loan to live someplace. Without this loan, this business arrangement would not have existed. Without this loan, he couldn't do the job, right? Just like without the degree, the advanced degree, that our hypothetical engineer can't do the master's level engineering, I think. Correct. He wouldn't have taken the job. It wouldn't have been interesting to him. But it's more than that. It has to be more than not being interesting, it seems to me. It has to be that it couldn't. He couldn't afford. To analogize it to the student loan, it would have been an impossible deal. He couldn't afford to have taken the job because he wouldn't have been able to buy in the Aspen area. He wouldn't have been able to... Presumably, we're talking about a commute that's unworkable, not just inconvenient. Right. It's Wyoming versus... But he also couldn't have... In fact, he could have taken the job if they had just given him more money and he had gone out on the market and gotten a mortgage. And that, we all agree, as I understand it, that mortgage would be a consumer loan. I would agree with you on that. But this is part of the compensation package. They wouldn't give him the more money. They couldn't, in their compensation for their other employees, have provided him with enough funds, just straight salary, to entice him to come there. He was exceedingly successful in his career. They wanted somebody of his caliber to come in and expand the Little Nell Hotel chain. Counsel, you're significantly over your time. Oh, I did not even see I was... That's okay. Thanks very much for your argument. Your Honor, in the actions of Record 581, the court explicitly found, quote, he could have rented. This was not a business requirement. And, in fact, the debtor stated in his deposition, it wasn't just any apartment he was looking for. It had to be nice enough for his, in a nice neighborhood or an appropriate size. And that's it. Actuates of Record 319. The case I was looking for earlier was Sherman. Why is that? I don't understand what you mean. We were talking about whether this is a business requirement, whether he could have worked and rented a house. Well, he used the maximum amount that they made available to him, but they chose to make it available to him and they know the Aspen market, so I'm not sure how that is his, how does that take away from his case? Well, purchasing a house is not a requirement for this gentleman to live in Aspen and work at this job. But he says he couldn't afford to rent there. Oh, no, that's not in the record, Your Honor. He said he did not want to. That's in Actuates of Record 319. Counsel, use your time the way you want to, but I think this is a really tough sell for you. Thank you, Your Honor. The case I was talking about earlier was the Sherman case from 2007 that I believe Judge Berzon authored, and that talks about the difference between an interlocutory and a final ruling. And the court found that so long as it is a final ruling, no stay is needed to prevent the bankruptcy court from further effectuating the order. And the debt is $345,000 in this case. And you would regard, my understanding of the ruling about why this is a final order is essentially analogous to, say, a qualified immunity appeal in the non-bankruptcy context, i.e., that this is a ruling about whether you're going to go through the process. That's exactly right, Your Honor. And with regard to if the employer had increased his salary, he would have gone out and purchased a market rate loan, would he still be arguing that this is a non-consumer debt? Well, your problem is that he says if they hadn't given the loan, he wouldn't have taken the job, right? He does say that, and then we turn right back to the credibility of a witness to an issue that's so central to every bankruptcy. We're going to create an issue of fact that allows any debtor to just check the box. Well, are you suggesting that he was found to lack credibility? No. Or that we should second-guess the credibility determination? You're just concerned about a floodgate, right? I'm concerned about the floodgate, Your Honor. I'm not saying he was dishonest. I'm saying that should Kelly says that even if the debtor has an absurd view, that's not the issue in the case. The issue is that people buy homes to live in, and they've already decided that and every court has adopted that rule, and the Cox case fully rejects that any subjective purpose could ever overcome the Kelly rule. Sam, Ford provides loans to buy a car to employees, and one of the reasons it does this is it wants its employees to have cars so that they can use the cars for sometimes, I suppose, for business purposes or maybe just to make their commute earlier, easier. You would take the same position, I take it, that that's a consumer loan? Yeah, Ford is in the business of creating cars. Aspen is obviously not in the real estate industry. I'm sorry, what? I'm not talking about Ford. I'm talking about some other employer, just an employer. In other words, if the benefit had been we're going to give you this Jeep Grand Charity, and you're the manager of a hotel. Absolutely. Yeah, the question is were they required to take that loan or were they required to buy that particular good in order to have that job? As long as they voluntarily took it, it's just another case. Well, no, the hypothetical is that the hotel chain wants their managers to be in spiffy cars. Yes, and if they did, if they did impose such a requirement, that would be a lot closer case and that would be a lot better facts for the debtor. There is no such requirement. You know, he just needs to show up on Monday morning just like every other employee. Okay. And that's the problem with this case. The facts are so ordinary. There's no evidence of any tax returns that were claimed as a business during the time, at any time during this case. Everything looks post hoc. So we're looking at a floodgate, which any debtor could argue this, and then it becomes a credibility determination. Well, whether it's a floodgate depends on what the focus is. If the focus is on the fact that this was provided by the employer to some degree for the employer's purposes, I don't know where the floodgate is. Your Honor, the Bushkin case that just came out from the BAPT cited Charette, had nothing to do with an employer-sponsored loan, had nothing to do with a mortgage, and cited very broadly the Charette case for the finding that the use of the funds is not determinative and the court must look to the subjective purpose of the debtor, which creates just an issue of fact in every single case. That depends on how we decide the case, not how the BAPT decided the case. Thank you. That's correct, Your Honor. Why don't you sum up, because you're out of time. I think this court should, just as the court did in Kelly, reverse a unanimous debtor-oriented decision of the BAPT and find that the debt was consumer, and if possible, also vacate the discharge order. Thank you, Your Honor. Thank you, counsel. Thank both counsel for your argument. That's the last case on the calendar for the day, so we'll stand and recess.
judges: Berzon, Christen, Nguyen